# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6590 | **DATE** | 9/28/2004 |
| **CASE TITLE** | KENNETH McDOWELL vs. J.B. HUNT TRANSPORT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants in part and denies in part Defendant's motion to dismiss [doc. no. 29-1]. Count II and IV are dismissed with prejudice. Counts V and VI are dismissed with prejudice to the extent they allege injuries caused during the scope of employment. Counts V and VI survive to the extent they allege injuries that occurred after Plaintiff's employment was terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | SEP 28 2004 date docketed | | |
| ✓ | Docketing to mail notices. | | | | 64 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT | | |
| CG | courtroom deputy's initials | | 2004 SEP 28 AM 9:27 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH McDOWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 03 C 6590 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| J.B. HUNT TRANSPORT, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth McDowell brings this action against Defendant J.B. Hunt Transport, Inc. alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Count I); violations of the Federal Motor Carrier Safety Regulations, 49 C.F.R. Part 40 and 49 C.F.R. §§ 382, 391 (Count II); discrimination in violation of 42 U.S.C. §§ 1981 and 1988 (Count III); intentional infliction of emotional distress (Count IV); intentional interference with actual and prospective economic relationships (Count V); negligent supervision and retention (Count VI); and defamation (Count VII).

Defendant moves to dismiss Counts II, IV, V, and VI of the Second Amended Complaint ("Complaint") for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and Counts IV and VI for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1). For the reasons set forth below, Defendant's motion to dismiss Counts II, IV, V, and VI is granted in part and denied in part.

64

## BACKGROUND

The following facts of the Complaint are assumed to be true for purposes of this motion to dismiss. *Albany Bank & Tr. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). Plaintiff is an African-American who was employed by Defendant from June 2001 through November 19, 2001. (Second Am. Compl. ¶¶ 9, 15, 17.) While employed, Plaintiff alleges he was forced to drive an unsafe vehicle, but newly hired Caucasian employees were given newer, safer vehicles to drive. (*Id.* ¶ 32.) Plaintiff's complaints about his vehicle were "mostly ignored." (*Id.* ¶ 10.) Plaintiff eventually was terminated for violating Defendant's Controlled Substance Abuse Policy for taking medication prescribed to his wife. (*Id.* ¶¶ 14, 17.)

Plaintiff alleges his termination and Defendant's treatment of African-American drivers as it relates to both vehicle assignment and the application of its substance abuse policy was discriminatory based on race. (*Id.* ¶ 19.) Plaintiff alleges that he never refused to take a drug test and should not have been terminated by Defendant without a reasonable suspicion drug test required by 49 C.F.R. § 382.307(b) (2004). (Second Am. Compl. ¶ 40.) Plaintiff further alleges that after his termination, Defendant published false information about his alleged drug use to others in the business of Defendant. (*Id.* ¶ 22.) Plaintiff claims that as a result of Defendant's actions, he has been unable to secure regular employment as a truck driver. (*Id.* ¶ 23.)

Plaintiff alleges that he has suffered lost wages, continuing injury to his career and employment, humiliation, mental anguish, invasion of privacy, damage to reputation, pain, and suffering. (*Id.* at 13, ¶ C.)

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency, not the merits, of the complaint. *Autry v. N.W. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). When reviewing a motion to dismiss, the Court accepts all well-pleaded facts as true and views any reasonable inferences from them in the light most favorable to the plaintiff. *Albany Bank*, 310 F.3d at 971. Dismissal is proper when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Federal courts require notice, not fact, pleading, in which the complaint must include a "short and plain statement of the claim." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). However, while "the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Menard Inc. v. U.S. Equities Dev., Inc.*, No. 01 C 7142, 2002 WL 31050160, at *1 (N.D. Ill. Sept. 13, 2002) (quoting *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985)). If the complaint fails to allege an element required to obtain relief, dismissal may be proper. *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. *See Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 986 (N.D. Ill. 2001). When reviewing a Rule 12(b)(1) motion to dismiss, the Court must accept all well-pleaded facts as true and draw reasonable inferences from those allegations in the plaintiff's favor. *See United*

*Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The Court also may look beyond the complaint and view whatever evidence has been submitted by the parties to determine whether subject matter jurisdiction exists. *Id.* (citing *Bowyer v. U.S. Dep't of Air Force*, 875 F.2d 632, 635 (7th Cir. 1989)). The plaintiff bears the burden of proving that the jurisdictional requirements have been met. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

## COUNT II

In Count II, Plaintiff asserts a claim for violations of the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Part 350 *et seq.* (Second Am. Compl. ¶ 34.) Specifically, Plaintiff alleges that his termination based on a violation of the company's Alcohol and Controlled Substances Abuse Policy without the administration of a drug test violated the "reasonable suspicion" drug test "required" by 49 C.F.R. § 382.307(b). (*Id.* ¶¶ 37, 40.) Plaintiff also asserts that Defendant's suspicion of Plaintiff's drug use was not reasonable under 49 C.F.R. § 382.307(b). (*Id.* ¶ 38.)

Defendant argues that Plaintiff's claim is barred as a matter of law because no private right of action exists to enforce such Department of Transportation regulations. Plaintiff responds that although the FMSCRs do not explicitly create a private right of action, Congress's silence on the issue does not indicate that it is not available. Furthermore, Plaintiff argues, because truck drivers' rights are protected under the regulations, the FMCSRs reveal an intention to benefit drivers.

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444

U.S. 11, 15-16 (1979); *see Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000), *cert. denied*, 533 U.S. 951 (2001) ("[F]ederal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute."). The relevant statute in this case is the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), 49 U.S.C. § 31306 (2004), pursuant to which the FMCSRs were promulgated. FOTETA amended the Federal Commercial Motor Vehicle Safety Act and other federal statutes to require drug testing of certain transportation workers in safety-sensitive positions. *See Drake v. Delta Airlines, Inc.*, 923 F. Supp. 387, 390-93 (E.D.N.Y. 1996), *vacated in part on other grounds*, 147 F.3d 169 (2d Cir. 1998). FOTETA provides, in part:

> In the interest of commercial vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor carriers to conduct preemployment, reasonable suspicion, random and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation and to conduct reasonable suspicion, random and post-accident testing of such operators for the use of alcohol in violation of law or a United States Government regulation. The regulations shall permit such motor carriers to conduct preemployment testing of such employees for the use of alcohol.

49 U.S.C. § 31306(b)(1)(A).

FOTETA is framed as a general mandate statute, expressly authorizing the Secretary of Transportation to prescribe regulations relating to the establishment of drug testing programs for commercial vehicle transportation. *See* 49 U.S.C. § 31306(b)(1)(B); *Parry*, 236 F.3d at 308. Pursuant to the statute, the Secretary promulgated regulations including the FMCSRs for the "purpose of . . . establish[ing] programs designed to help prevent accidents and injuries resulting

from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles." 49 C.F.R. § 382.101. The Secretary also has promulgated the Department of Health and Human Services Procedures for Transportation Workplace Drug and Alcohol Testing Programs regulations. *See* 49 C.F.R. Part 40.

It is undisputed that FOTETA does not provide an express right of action, so the question is whether a private right of action is implied in the statute. *See Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 540 (7th Cir. 1993). The Court concludes that no private right of action is implied.

In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court described a four-part test to determine whether an implied right of action exists in a federal statute: (1) whether the plaintiff is among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy. *Id.* at 78. The Supreme Court has since refined this inquiry, and the central question is whether Congress intended to create a private cause of action. *See Transamerica*, 444 U.S. at 15-16; *see also Statland*, 998 F.2d at 540 ("Of late courts seldom imply a private right of action where none appears in the statute, for a strong presumption exists against their creation.") (alteration and quotation omitted).

Plaintiff argues first that commercial drivers should have a private right to enforce FOTETA against employers because administrative procedures cannot address wrongs committed against

employees and second that the FMCSRs reveal an intention to protect and benefit drivers. Plaintiff's arguments are unavailing.

First, the FMCSRs include enforcement provisions, including civil and/or criminal penalties for an employer's non-compliance, *see* 49 C.F.R. § 382.507, so a private right of action is not necessary to further FOTETA's purposes. *See Transamerica*, 444 U.S. at 19 ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

Second, while drivers may indirectly benefit from uniform procedures, and the statute and regulations include protections for employees affected by drug testing requirements, (*see* 49 U.S.C. § 31306(c); 49 C.F.R. § 382.60), this does not mean commercial drivers are a class of persons for whose benefit FOTETA was enacted. *See Parry*, 236 F.3d at 309 (holding that FOTETA's "regulatory scheme does not evince a concern for the protection of drivers who believe they have been aggrieved through the drug testing process"); *see also Transamerica*, 444 U.S. at 24 ("[T]he mere fact that the statute was designed to protect [certain persons] does not require the implication of a private cause of action for damages on their behalf."); *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1122 (9th Cir. 2000) (contrasting statutes that expressly name intended beneficiaries from "laws enacted for the protection of the general public") (citation and quotation omitted); *Statland*, 998 F.2d at 540 ("[A] private cause of action is seldom implied for statutes framed as general commands to a federal agency or for statutes that do not create rights for a specific class of persons.").

Prior cases analyzing FOTETA and regulations promulgated thereunder have uniformly found that the statute does not expressly or impliedly create a private right of action. *See Drake*, 923 F. Supp. at 392 ("[I]t is clear that Congress in enacting [FOTETA] intended to provide a general benefit to the public by increasing the level of passenger safety, and did not intend to establish a private right of action for the transportation industry's employees."); *see also Parry*, 236 F.3d at 309; *Abate v. S. Pac. Transp. Co.*, 928 F.2d 167, 169-70 (5th Cir. 1991); *Howell v. Lab One, Inc.*, 243 F. Supp. 2d 987, 990 (D. Neb. 2003); *Byrne v. Mass. Bay Transp. Auth.*, 196 F. Supp. 2d 77, 86-87 (D. Mass. 2002); *Salomon v. Roche Compuchem Labs., Inc.*, 909 F. Supp. 126, 128 (E.D.N.Y. 1995); *Mayo v. USF Holland, Inc.*, No. 1:03-CV-4, 2003 WL 21788853, at *8 (W.D. Mich. Feb. 12, 2003).

Because FOTETA neither expressly nor impliedly creates a private right of action, Count II fails to allege a claim upon which relief can be granted. Accordingly, the Court grants Defendant's motion to dismiss Count II of the Second Amended Complaint with prejudice.

## COUNT IV

In Count IV, Plaintiff alleges a state law claim of intentional infliction of emotional distress ("IIED"). Defendant argues this claim is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILL. COMP. STAT. § 5/1-101 *et seq.* (2004), and the Illinois Workers Compensation Act ("IWCA"), 820 ILL. COMP. STAT. § 305/1 *et seq.* (2004), and therefore should be dismissed pursuant to Rule 12(b)(1). In the alternative, Defendant asserts that the allegations in the Complaint do not constitute IIED as a matter of law.

## A. The Illinois Human Rights Act

The IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."[1] 775 ILL. COMP. STAT. § 5/8-111(C). Therefore, the IHRA preempts any state or common law claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997); *see Beard v. City of Chi.*, 299 F. Supp. 2d 872, 874 (N.D. Ill. 2004); *see also Jones v. Sabis Educ. Sys., Inc.*, No. 98 C 4252, 1999 WL 1206955, at *9 (N.D. Ill. Dec. 13, 1999) (explaining that "Illinois state courts and federal courts exercising supplemental jurisdiction over Illinois state claims lack subject matter jurisdiction over" claims preempted by the IHRA).

Defendant argues that because Plaintiff's IIED claim incorporates by reference the earlier allegations in the Complaint, *i.e.*, allegations relating to discrimination, and does not state any other specific factual basis for the IIED claim, it is "inextricably linked" to the discrimination claim. The Court agrees that to the extent the IIED claim is based upon alleged discrimination, it is preempted by the IHRA. Indeed, Plaintiff does not argue to the contrary. Plaintiff responds instead that the IIED claim "arises from actions taken by the Defendant outside of the course of employment," namely providing false information to Plaintiff's subsequent actual and/or potential employers. (Pl.'s Resp. Def.'s Mot. Dismiss ["Pl.'s Resp."] at 6-7.) Although these allegations are not expressly

---

[1] The IHRA provides: "It is a civil rights violation . . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILL. COMP. STAT. § 5/2-102.

included in Count VI, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). And although Plaintiff is under no obligation to plead those facts, *see id.*, the Court notes that the substance of the defamation allegations are included elsewhere in the Complaint.

Therefore, the Court finds that Plaintiff's allegations of IIED for acts occurring after his employment was terminated state a claim that is not inextricably linked to the alleged civil rights violation, and those allegations are not preempted by the IHRA.

### B. The Illinois Workers Compensation Act

The IWCA contains an exclusivity provision which provides: "No common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act . . . ." 820 ILL. COMP. STAT. § 305/5(a); *see Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1016 (7th Cir. 1997) (holding that the IWCA provides the exclusive remedy for accidental injuries that occur in the course of employment); *Socorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 WL 1964269, at *5 (N.D. Ill. Apr. 28, 2003) (citing *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 201-02 (Ill. 1980)) (explaining that the IWCA bars IIED claims arising out of and in the course of employment). Therefore, to the extent the Complaint may attempt to state a claim for injuries sustained during his employment, it is preempted by the IWCA.

However, as with his response to Defendant's IHRA preemption argument, Plaintiff argues that the IWCA does not preempt his claim for IIED based on false information given to an actual and/or prospective employer after his termination. (Pl.'s Resp. at 7-8.) In order for a claim not to be preempted, an employee must prove that the injury (1) was not accidental; (2) did not arise from the plaintiff's employment; (3) was not received during the course of employment; or (4) was not compensable under the Act. *Hunt-Golliday*, 104 F.3d at 1016. Taking Plaintiff's allegations as true, Defendant's communication with the third party occurred after Plaintiff was terminated. Therefore, any injury caused by the communication did not arise from Plaintiff's employment and was received outside the scope of employment. Therefore, the IWCA does not preempt Plaintiff's claims of IIED injuries resulting from actions that took place after Plaintiff's employment ended.

### C. **IIED as a Matter of Law**

Having determined that Plaintiff's IIED claim for injuries allegedly sustained after his termination is not preempted, the Court turns to the question of whether these allegations state a claim upon which relief can be granted.

To state a cause of action for IIED, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case. *See McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1988).

Defendant argues that the conduct Plaintiff complains of does not qualify as "extreme and outrageous" as a matter of law. "'Liability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Id.*

Plaintiff has expressly argued that the sole basis for his IIED claim is Defendant's alleged defamatory statement to a subsequent employer "communicating suspicion of drug use without positive proof." (Pl.'s Resp. at 9.) Allegations of defamation, however, do not rise to the level of extreme and outrageous conduct. *See Cook v. Winfrey*, 141 F.3d 322, 331-32 (7th Cir. 1998) (affirming dismissal of IIED claim, explaining that "[a] number of Illinois courts have dismissed claims of [IIED] based upon defamation, on the ground that the conduct was not 'extreme and outrageous'"). The facts of this case are remarkably similar to *Socorro v. IMI Data Search, Inc.*, 2003 WL 1964269, in which the defendant company fired the plaintiff based on false information about his criminal history and then repeated the false information to others, making the plaintiff unable to secure new employment. *Id.* at *1. The district court dismissed the IIED claim, noting that although the allegations were "deplorable if proven," they were not sufficient to sustain an IIED claim. *Id.* at *5 ("[Plaintiff's] naked statement that the conduct was 'outrageous' does not make it so."). Plaintiff's attempts to distinguish *Socorro* are not persuasive. Therefore, Count VI must be dismissed with prejudice.

12

## COUNT V

In Count V, Plaintiff alleges intentional interference with actual and prospective economic relationships ("IIAPER") related to his contract with both Defendant and a subsequent employer.

To state a claim for interference with an existing contractual right under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of that contract; (4) a subsequent breach by the other caused by the defendant's wrongful conduct; and (5) damages. *See Accurso v. United Airlines, Inc.*, 109 F. Supp. 2d 953, 962 (N.D. Ill. 2000).

Where the plaintiff's economic expectancy has yet to solidify into a contractual relationship, the plaintiff must allege: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) an intentional and unjustified interference by the defendant that caused a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference. *See Walker v. Braes Feed Ingredients, Inc.*, No. 02 C 9236, 2003 WL 1956162, at *6 (N.D. Ill. Apr. 23, 2003).

Defendant is correct that Plaintiff cannot state a claim for IIAPER as it relates to Plaintiff's contract with Defendant. A claim of intentional interference generally can only be brought against a third party, not an employer. *See Drury v. Sanofi-Synthelabo, Inc.*, 292 F. Supp. 2d 1068, 1071 (N.D. Ill. 2003); *see also Cromeens, Holloman, Sibert, Inc., v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("A party may not be charged with tortious interference with respect to its own contract.").

13

The remaining issue, therefore, is whether Plaintiff states a claim for IIAPER regarding actual or prospective contracts with subsequent employers. Defendant first argues that Plaintiff has essentially pleaded himself out of a claim for interference with actual contractual relationships because the Complaint alleges that "Plaintiff has been unable to secure regular employment as a truck driver." (2d Am. Compl. ¶ 23.) However, the allegation that Plaintiff could not secure "regular" employment does not foreclose the possibility that he had in fact secured some employment. Moreover, the Complaint also alleges that Plaintiff may have had "actual contractual relationships" with others, (*id.* ¶ 59), and "ambiguities in complaints in federal court should be interpreted in favor of plaintiffs, not defendants," *Early*, 959 F.2d at 79.

Reading the allegations of the Complaint in the light most favorable to Plaintiff, he alleges that he had a valid employment contract with a third party; that Defendant was aware of this relationship and purposely and intentionally intended to harm Plaintiff by informing the third party employer of Plaintiff's termination for alleged drug use; that absent Defendant's conduct, Plaintiff would not have been terminated from his employment; and that because of this conduct, he has been unable to obtain regular employment as a truck driver, resulting in damages.

In the alternative, Plaintiff also alleges the elements required for stating a claim for intentional interference with prospective economic relationships. Although the hope of obtaining employment or even being a job candidate does not constitute a "reasonable expectancy," *see Walker*, 2003 WL 1956162, at *6, Plaintiff argues in his response that he had been hired by another company, which created a reasonable expectancy of continuing an economic relationship. Plaintiff alleges he had completed orientation and training for the company, and he was reporting for his first

day of assignments when he was terminated. Furthermore, because Defendant allegedly initiated communications with this third party, Defendant was aware of this expectancy. Finally, Plaintiff contends that Defendant's intentional and false communications with the third party caused the company to terminate its business relationship with Plaintiff, and as a result, Plaintiff has been damaged. Therefore, Defendant's motion to dismiss Count V is denied.

### COUNT VI

In Count VI, Plaintiff attempts to state a negligent retention and supervision claim. Defendant asserts this claim is preempted by the IHRA and IWCA and should be dismissed pursuant to Rule 12(b)(1) on the grounds that Illinois state courts have exclusive jurisdiction. *See, e.g., Luttrell v. O'Connor Chevrolet, Inc.*, No. 01 C 979, 2001 WL 1105125, at *3 (N.D. Ill. Sept. 19, 2001) (citing *Maksimovic*, 687 N.E.2d at 24) (holding that negligent training, supervision, and training claims that are inextricably linked to claims under the IHRA are preempted). The parties' arguments mirror those in relation to preemption of the IIED claim, discussed above, and the same conclusion applies. To the extent the Complaint may allege negligent supervision for acts occurring during Plaintiff's employment, those claims are preempted and therefore must be dismissed pursuant to Rule 12(b)(1). However, the negligent retention and supervision claim based on post-employment occurrences is not preempted and survives dismissal. Defendant chose not to move to dismiss this Count on other grounds, and thus, the Court need not analyze whether Plaintiff's allegations in Count VI state a claim upon which relief may be granted.

## CONCLUSION

For the reasons provided herein, the Court grants in part and denies in part Defendant's motion to dismiss [doc. no. 29-1]. Count II and IV are dismissed with prejudice. Counts V and VI are dismissed with prejudice to the extent they allege injuries caused during the scope of employment. Counts V and VI survive to the extent they allege injuries that occurred after Plaintiff's employment was terminated.

SO ORDERED.   ENTERED: 9/28/04 /s/ Ronald A. Guzman
HON. RONALD A. GUZMAN
United States Judge