Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6590 | **DATE** | 12/6/2004 |
| **CASE TITLE** | KENNETH MCDOWELL vs. J.B. HUNT TRANSPORT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: There is no genuine issue of material fact as to any of McDowell's claims against Hunt, which is entitled to judgment as a matter of law. Hunt's motion for summary judgment [doc. no. 49] is, therefore, granted. This is a final and appealable order. This case is terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | JXM docketing deputy initials | 66 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MCDOWELL, | ) | |
| Plaintiff, | ) ) ) | No. 03 C 6590 |
| v. | ) ) | Judge Ronald A. Guzmán |
| J.B. HUNT TRANSPORT, INC., | ) ) | |
| Defendant. | ) | |


DOCKETED
DEC 8 2004

## MEMORANDUM OPINION AND ORDER

Kenneth McDowell has sued J.B. Hunt Transport, Inc. ("Hunt"), alleging that it discharged him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § ("section") 1981 and violated his rights under state law. Hunt has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts[1]

In June 2001, Kenneth McDowell, an African-American, was hired by Hunt as a driver for its Wal-Mart account. (Def.'s LR 56.1(a) Stmt. ¶¶ 1, 6, 10.) Hunt assigned trucks to Wal-Mart drivers on the basis of seniority. (*Id.* ¶ 12.) At various times throughout his employment, McDowell complained about the condition of the trucks he was assigned. (*Id.* ¶ 44.) Hunt never disciplined McDowell for refusing to drive a truck he believed was unsafe. (*Id.* ¶ 47.)

When McDowell was hired in 2001, he received a copy of Hunt's driver's manual. (*Id.* ¶ 13.)

---

[1]Unless otherwise noted, the following facts are undisputed.

The manual contains Hunt's substance abuse policy, which prohibits the use of illegal drugs and the abuse of legal drugs by, among other things, taking another person's prescription medication. (*Id.* ¶ 15.) The manual also states that any violation of the substance abuse policy is grounds for immediate termination. (*Id.* ¶ 16.)

On the evening of Thursday, November 15, 2001, McDowell called Steve Eichler, one of his supervisors, to say that he would be unable to work his scheduled shift the next day. (*Id.* ¶¶ 7, 20.) According to Eichler, during the course of that conversation, McDowell said that he had taken Vicodin that had been prescribed for his wife. (*Id.* ¶ 21.) Eichler told McDowell that he had violated Hunt's substance abuse policy and would have to be terminated. (*Id.* ¶ 23.)

On Monday, November 19, 2001, McDowell met with Hunt Operations Manager, Charles Bostick. (*Id.* ¶¶ 25, 29.) McDowell showed Bostick a prescription for Vicodin. (*Id.* ¶ 29.) The prescription, which was dated four years earlier, was for only fifteen pills and had no refills, did not convince Bostick that McDowell had taken medication that was prescribed for him. (*Id.* ¶¶ 29-32.) As a result, Bostick told McDowell he was being terminated for his violation of Hunt's substance abuse policy. (*Id.* ¶ 34.)

After McDowell's termination, Hunt reported to DAC Services, an agency that maintains records on terminated drivers for motor carriers, that he had been terminated for violating a company policy. (*Id.* ¶¶ 53-55.) After Hunt made that report, McDowell was hired by another trucking company, Eagle Express Lines. (*Id.* ¶¶ 56-57.) Shortly after Eagle hired McDowell, it fired him. (*Id.* ¶ 60). Eagle's DAC report on McDowell indicates that Eagle fired him for violations of the company's policies and the Department of Transportation's drug and alcohol regulations. (*Id.* ¶ 61.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

In Counts I and III of his complaint,[2] McDowell alleges that Hunt discriminated against him in violation of Title VII and section 1981. Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). "While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat'l Labs.*, 984 F.2d 1467, 1472 (7th Cir.1993).

McDowell contends that Hunt discriminated against him by: (1) assigning him less desirable trucks than were assigned to white drivers with less seniority; and (2) terminating him for violating the substance abuse policy without giving him a drug test, a summary process that was not applied

---

[2]Counts II and IV of McDowell's complaint were dismissed earlier this year. (*See* 9/28/04 Min. Order.)

3

to white drivers. McDowell has no direct evidence of discrimination on either claim. Thus, he must comply with the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), if he is to defeat Hunt's motion. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). To do so, McDowell must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he was meeting Hunt's legitimate expectations; (3) he suffered an adverse employment action; and (4) Hunt treated similarly situated employees outside the protected class more favorably. *Id.* at 204; *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). If McDowell makes a *prima facie* case, the burden of production shifts to Hunt to articulate a legitimate, nondiscriminatory reason for its actions. *Von Zuckerstein*, 984 F.2d at 1472. If Hunt carries its burden, McDowell must show that the proffered reason is merely a pretext. *Id.*

Hunt says McDowell cannot make a *prima facie* case on his first claim because being assigned an inferior truck is not an adverse employment action. Employment actions are adverse only if they cause "a materially adverse change in the terms or conditions of . . . employment." *Spring v. Sheboygan Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Though the term is interpreted broadly in this circuit, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441-42 (7th Cir. 1996).

McDowell says Hunt assigned him a truck that "bl[ew] back exhaust fumes," which gave him

4

headaches and made it difficult for him to breathe. (Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 238-39.) Hunt contends that the truck assignment, which did not lead to McDowell's termination or otherwise decrease his pay or benefits, was an annoyance, not an adverse action.

Even assuming, *arguendo*, that the truck assignment was an adverse action, McDowell still could not make a *prima facie* case because he has no evidence that any similarly situated, non-Black driver received better treatment. McDowell admits that Hunt assigned trucks based on seniority, (Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶ 12), and he has not identified any less senior, non-Black driver who was assigned a better vehicle. Absent such evidence, McDowell has not made a *prima facie* case on his discriminatory truck assignment claim.

McDowell's termination claim is similarly deficient. Though McDowell testified that Hunt gave a drug test to Kenneth Conard, a white driver who was accused of violating the substance abuse policy, (*see* Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 282-83), he has no admissible evidence to support that assertion. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (stating that only "evidence of evidentiary quality" will defeat a summary judgment motion). Moreover, even if he did, that fact would be relevant only if McDowell had evidence to suggest that he and Conard were situated similarly. He does not. On the contrary, it is undisputed that Conard was a safety instructor, not a driver, reported to different supervisors than McDowell and was accused of taking an over-the-counter medication, not another person's prescription drugs. *See Blackwell v. Bob Evans Farms, Inc.*, No. 94 C 7703, 1996 WL 406654, at *4 (N.D. Ill. July 17, 1996) (noting that employees are similarly situated if "all of the relevant aspects of [their] employment situation[s] [are] nearly identical") (internal quotation marks and citation omitted);

5

(Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 282-83; Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶ 40). Because there record suggests that McDowell and Conard were not situated similarly, McDowell could not satisfy the last element of the *prima facie* case even if he had admissible evidence of Conard's drug test.

In short, McDowell has not made a *prima facie* case of discrimination on any of his Title VII or section 1981 claims. Hunt's motion for summary judgment on those claims is, therefore, granted.

In Count V of his complaint, McDowell alleges that Hunt interfered with his existing and prospective economic relationships. To survive Hunt's motion on the former claim, McDowell must offer some evidence to suggest that he had a valid contract with another, Hunt knew about the contract and intentionally, unjustifiably and successfully induced the other party to breach it, and McDowell was damaged as a result. *See Accurso v. United Airlines, Inc.*, 109 F. Supp. 2d 953, 962 (N.D. Ill. 2000). McDowell must make a similar showing for the latter claim. He must offer facts to suggest that he had a reasonable expectation of entering a business relationship with another, Hunt knew about it and intentionally, unjustifiably and successfully caused the other party to forego the relationship, and McDowell was damaged as a result. *See id.*

In his deposition, McDowell said Hunt interfered with his economic relationships in two ways. First, Hunt prevented him from obtaining employment with other trucking companies by falsely reporting to DAC Services that McDowell was fired for violating a company policy. (Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 122-23, 159-60, 301-02.) Second, Hunt caused Eagle Express to terminate his employment by telling Eagle that Hunt fired McDowell for drug use. (*Id.* at 35-36.) The record does not support either of those claims.

McDowell's first claim is premised on the notion that he had not violated and, therefore, was

6

not terminated for violating, a Hunt company policy. But, as we noted above, McDowell has no evidence to refute Hunt's assertion that it believed he had violated its substance abuse policy. On the contrary, McDowell admits that: the driver's manual he received when he was hired stated that taking drugs prescribed for another was a violation of the company's substance abuse policy and grounds for immediate termination (Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶¶ 13, 15-19); when he phoned Eichler on the evening of November 15, 2001, McDowell was discussing prescription drugs, including Vicodin, with friends (*id.* ¶¶ 20, 22); during that call, Eichler believed McDowell admitted to having taken his wife's prescription Vicodin (Def.'s LR 56.1(a) Stmt. ¶ 21); the Vicodin prescription McDowell showed Bostick after he was terminated was dated four years earlier, was only for fifteen pills and had no refills (Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶¶ 29-31); and the reason McDowell was given for his termination was that he violated Hunt's substance abuse policy by taking medication that was not prescribed for him (*id.* ¶ 36; Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 143). Because the record does not suggest that Hunt lied to DAC about its reason for terminating McDowell, its report to DAC cannot support an interference claim.

The record also does not support McDowell's claim that Hunt caused Eagle to fire him by telling Eagle that Hunt dismissed him for drug use. McDowell has no direct evidence that Hunt made any such statement to Eagle but contends that a statement can be inferred from two asserted facts: (1) Eagle and Hunt both had accounts with the United States Post Office; and (2) a few weeks after he was hired, John Cobb, an Eagle supervisor, told McDowell that he had heard McDowell was fired by Hunt for "doing drugs." (Def.'s App. Exs. Supp. Mot. Summ. J., Ex. 1, McDowell Dep. at 35-36.)

The first fact is a non-starter. Without evidence that the Hunt and Eagle employees who

7

supervised McDowell interacted at their common work site, the fact that both companies had an account with one entity does nothing to further McDowell's claim.

The second fact is similarly unavailing. Cobb's alleged statement would only support an interference claim only if there were evidence to suggest that his information came from Hunt management. There is not. In fact, there are no facts to suggest that anyone from Hunt was the source of Cobb's information. Absent evidence linking Cobb's statement to Hunt management, and McDowell has provided none, McDowell's second interference claim cannot survive.

In Count VII, McDowell alleges that Hunt is liable for defamation. To prevail on this claim, McDowell must prove that he was damaged by an unprivileged publication of a false statement Hunt made about him to a third-party. *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 291-92 (Ill. App. Ct. 2001). As discussed above, McDowell has offered no facts to suggest that it gave any information to Eagle or that the information it gave to DAC was false. Consequently, Hunt is entitled to judgment on McDowell's defamation claim.

McDowell's last claim, asserted in Count VI, is that Hunt is liable for negligently supervising and retaining the employees whose conduct harmed him. Because there is no evidence that any Hunt employee harmed McDowell, however, this claim must also be dismissed.

## Conclusion

For the reasons stated above, there is no genuine issue of material fact as to any of McDowell's claims against Hunt, which is entitled to judgment as a matter of law. Hunt's motion for summary judgment [doc. no. 49] is, therefore, granted. This is a final and appealable order.

**SO ORDERED**             **ENTERED:** 12/6/04

HON. RONALD A. GUZMAN
**United States District Judge**